# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ASSOCIATION CASUALTY INSURANCE COMPANY<br>2102 Whitegate Drive<br>Columbia, MO 65202<br><br>v.<br><br>WYNDHAM HOTELS & RESORTS, INC.<br>22 Sylvan Way<br>Parsippany, NJ 07054 | :<br>:<br>:<br>:<br>:<br>:<br>: CIVIL ACTION NO.<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff ASSOCIATION CASUALTY INSURANCE COMPANY ("ASSOCIATION"), by and through its undersigned counsel and pursuant to 28 U.S.C § 2201 and § 2202 and Chapter 86 of the Florida Statutes, hereby files this action against Defendant WYNDHAM HOTELS & RESORTS, INC. ("WYNDHAM") and avers as follows:

### PRELIMINARY STATEMENT

1. This is an action seeking declaratory judgment to resolve a dispute over insurance coverage with regard to whether ASSOCIATION is obligated to defend WYNDHAM in a matter currently pending in the United States District Court Southern District of Ohio captioned *C.T. v. Red Roof Inns, Inc. et al.*, Civil Action No. 2:19-cv-05384-ALM-EPD (the "underlying action"). A true and correct copy

of the Amended Complaint in the underlying action is attached hereto as Exhibit "A."

## PARTIES

2. Plaintiff ASSOCIATION is a Texas Insurance Company with its principal place of business in Missouri. ASSOCIATION was, at all times relevant hereto, authorized and licensed to do business in the State of Florida.

3. Defendant WYNDHAM is a Delaware company with its principal place of business in New Jersey. WYNDHAM was, at all times relevant hereto, authorized to do business in the State of Florida. WYNDHAM may be served with process by serving its registered agent Corporate Creations Network, Inc. at 801 U.S. Highway 1, North Palm Beach, Florida 33408.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties' citizenship is diverse and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. ASSOCIATION brings this action pursuant to 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in this Court under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the underlying action occurred in this

District and the policy of insurance giving rise to this action was entered into in this District.

## FACTS

7. This dispute arises out of a demand for indemnity issued by WYNDHAM to its franchisee Sita Rami & Sons, Inc., ASSOCIATION's insured, with respect to a lawsuit filed on December 8, 2019, in the United States District Court Southern District of Ohio alleging sex trafficking which allegedly occurred between 2008 and 2010 at the insured premises of 11435 South Cleveland Avenue, Fort Myers, Florida ("the Underlying Action").

8. The Underlying Action was brought against several national hotel chains, including WYNDHAM.

9. The Underlying Action did not name as party defendants any of the individual franchisees, including ASSOCIATION's insured Sita Rami and Sons, Inc., which operated the Days Inn located at 11435 South Cleveland Avenue, Fort Myers, Florida ("the Property").

10. During the period the events in the Complaint were alleged to have occurred, the subject Days Inn was insured under three insurance policies bearing Policy Numbers CMP0102410-00, CMP0102410-01, and CMP010241-02 issued by ASSOCIATION to its insured Sita Rami and Sons, Inc. located on the Property

(collectively "the Policies"). True and correct certified copies of the redacted[1] Policies in effect from December 10, 2007 through December 10, 2010 are attached hereto as Exhibits "B", "C", and "D", respectively.

11. ASSOCIATION insured the subject Property under the subject Policies from December 10, 2007 through December 10, 2010.

12. The Complaint in the Underlying Action was filed on December 8, 2019.

13. WYNDHAM sent its demand for indemnity to ASSOCIATION's insured on December 17, 2019. A true and correct copy of WYNDHAM's demand is attached hereto as Exhibit "E."

14. Soon thereafter, ASSOCIATION assigned coverage counsel to investigate coverage for WYNDHAM under the Policies.

15. During the time period ASSOCIATION was investigating WYNDHAM's indemnity claim, WYNDHAM retained counsel to defend it in the Underlying Action.

16. On February 17, 2020, Michael Reed of the firm Hahn Loeser Parks, LLP noticed his appearance as counsel for WYNDHAM in the Underlying Action.

---

[1] Redacted only for purposes of holding premium amounts confidential as proprietary business information.

17. Unbeknownst to ASSOCIATION, WYNDHAM also retained David S. Sager of DLA Piper, LLP to act as national coordinating counsel for WYNDHAM in a number of human trafficking civil actions brought throughout the United States including the Underlying Action.

18. ASSOCIATION provided its initial response to WYNDHAM's demand for indemnity on March 30, 2020, to WYNDHAM's counsel of record. In its response, ASSOCIATION requested a copy of the franchise agreement between WYNDHAM and its insured Sita Rami & Sons, Inc.

19. In the years that passed between the events alleged in the Complaint which occurred between 2008 and 2010, and the Plaintiff's filing of the Underlying Action in December 2019, Sita Rami and Sons, Inc. had sold the motel and gone out of business impeding ASSOCIATION'S ability to make contact with its former insured. ASSOCIATION required a copy of the franchise agreement to investigate its obligation, if any, to insure WYNDHAM as an additional insured under its Policies.

20. The franchise agreement was provided by WYNDHAM on March 31, 2020. ASSOCIATION continued its investigation into coverage and requested additional information from WYNDHAM including copies of its insurance policies to determine primary and secondary coverage and certain information regarding the

corporate relationship and/or affiliation between WYNDHAM, Days Inn Worldwide, Inc., Cendant Finance Holding Corporation, and Cendant Corporation.

21. Without the benefit of receiving any insurance information whatsoever from WYNDHAM, ASSOCIATION acting in good faith, rendered its coverage decision on May 4, 2020, accepting its duty to defend WYNDHAM in the Underlying Action under the terms of the Policies and Florida law. A true and correct copy of ASSOCIATION's coverage decision and offer of defense is attached hereto as Exhibit "F."

22. ASSOCIATION's offer of defense was met immediately with opposition by WYNDHAM's coverage counsel, who summarily refused ASSOCIATION's offer of defense by letter dated May 11, 2020. A true and correct copy of such correspondence is attached hereto as Exhibit "G."

23. On June 12, 2020, ASSOCIATION sent a second offer to engage counsel to defend WYNDHAM also requesting additional information from WYNDHAM as part of its continued investigation into its duty to defend WYNDHAM under the Policies. A true and correct copy of such correspondence is attached as Exhibit "H."

24. ASSOCIATION received no response to its June 12, 2020, offer. So, on October 1, 2020, ASSOCIATION again corresponded with WYNDHAM seeking

a response to its second offer to defend WYNDHAM. A true and correct copy of such correspondence is attached hereto as exhibit "I."

25. On November 6, 2020, WYNDHAM finally responded to ASSOCIATION's correspondence, providing some clarification as to the relationship between multiple corporate entities related to it. Instead of responding to ASSOCIATION's offer of defense, WYNDHAM included a non-disclosure agreement ("NDA") "so that [WYNDHAM] may share confidential information in the future, namely, [WYNDHAM's] defense invoices." A true and correct copy of this correspondence is attached hereto as Exhibit "J." Since ASSOCIATION had never agreed to pay WYNDHAM's defense costs, execution of the NDA would serve no purpose.

26. On February 16, 2021, the legal landscape of the Underlying Action shifted when Judge Marbley entered his Order & Opinion transferring the case to the United States District Court Middle District of Florida. A true and correct copy of the Opinion & Order is attached hereto as Exhibit "K."

27. On February 19, 2021, ASSOCIATION reiterated its offer of defense to WYNDHAM in the soon-to-be-transferred middle District of Florida case. A true and correct copy of ASSOCIATION's third offer to defend WYNDHAM is attached hereto as Exhibit "L."

28. As before, WYNDHAM failed to respond to ASSOCIATION's offer. As a result, on July 30, 2021, ASSOCIATION again requested a written response to its offers of defense dated October 1, 2020 and February 19, 2021. A true and correct copy of ASSOCIATION's request is attached hereto as Exhibit "M."

29. ASSOCIATION received no response from WYNDHAM.

30. On September 30, 2021, the Underlying Action was re-transferred to the United States District Court Southern District of Ohio due to a pending appeal by Plaintiff to the Sixth Circuit by Judge Steele. A true and correct copy of the Opinion and Order issued by Judge Steele is attached hereto as Exhibit "N."

31. Upon the re-transfer of the Underlying Action back to Ohio, and without any response to its offers of defense by WYNDHAM, ASSOCIATION engaged conflict-free Columbus, Ohio defense counsel to defend WYNDHAM in the Underlying Action again pending in the Southern District of Ohio. ASSOCIATION proffered the services of David A. Goldstein, Esquire as additional defense counsel for WYNDHAM by letter dated February 21, 2022. A true and correct copy of such correspondence is attached hereto as Exhibit "O."

32. More than one month later, on March 25, 2022, WYNDHAM ordered Mr. Goldstein not to appear in the case and once again countered ASSOCIATION's numerous offers of defense by insisting that Columbia approve DLA Piper as

defense counsel. A true and correct copy of WYNDHAM's March 25, 2022 counteroffer is attached hereto as Exhibit "P."

33. On April 27, 2022, ASSOCIATION made one final offer to provide a defense for WYNDHAM under its Policies. A true and correct copy of ASSOCIATION's final offer is attached hereto as Exhibit "Q."

34. On May 3, 2022, WYNDHAM once again ordered Mr. Goldstein not to appear on its behalf, threatened Mr. Goldstein with an ethics complaint, and insisted that ASSOCIATION pay for counsel unilaterally retained by WYNDHAM without notice to or approval by ASSOCIATION contrary to the express terms of the Policies. WYNDHAM raises the specter of "conflicts of interest" which simply do not exist in the Underlying Action because ASSOCIATION's insured has not been sued. A true and correct copy of WYNDHAM's May 3, 2022, denial of ASSOCIATION's right to defend it is attached hereto as Exhibit "R."

## THE ASSOCIATION POLICIES

35. The Policies insured the Days Inn located at 11435 S. Cleveland Avenue, Fort Myers, Florida 33907.

36. Sita Rami & Sons, Inc. DBA Days Inn is identified as a named insured under the Policies.

37. ASSOCIATION's insured, Sita Rami & Sons Inc. (the "Insured") entered into a License Agreement (the "License Agreement") with Days Inn Worldwide, Inc. in December 2000.

38. Pursuant to Section 3.10 of the License Agreement, the Insured had to obtain and maintain certain insurance coverage as required by the System Standards Manual. Such liability policies were required to name Days Inn Worldwide, Cendant Finance Holding Corporation, and Cendant Corporation as additional insureds.

39. The Policies in effect between December 10, 2008 through December 10, 2010 named WYNDHAM, Worldwide Corporation, WYNDHAM Hotel Group LLC (the "Additional Insured") and all related entities as additional insureds as "Grantor of Franchise."

40. As an Additional Insured under the Policies, WYNDHAM was at all times relevant hereto bound by the Policies' provisions.

41. Liability coverage is provided pursuant to the following Insuring Agreement:

> SECTION I - COVERAGES
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property

damage" to which this insurance applies. ***We will have the right and duty to defend the insured against any "suit" seeking those damages.*** However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1)  The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

      (2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

    b.  This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;

      (2)  The "bodily injury" or "property damage" occurs during the policy period; and

      (3)  Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1 of

Section II – Who is An Insured or any "employee" authorized by you to give or receive notice of an "Occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1 of Section II – Who is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

(Emphasis supplied.)

42. Personal and Advertising Liability coverage is provided pursuant to the following Insuring Agreement:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. ***We will have the right and duty to defend the insured against any "suit" seeking those damages***. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

***No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B***.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense is committed in the "coverage territory" during the policy period.

(Emphasis supplied.)

43. Supplementary coverage is provided pursuant to the following:

SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses *we incur*.

\* \* \*

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

(Emphasis supplied.)

**COUNT I – DECLARATORY RELIEF**

44. ASSOCIATION realleges and incorporates Paragraphs 1 through 43 as if stated verbatim herein.

45. ASSOCIATION has filed this action to have this Court declare the rights of the parties and seeks a ruling that ASSOCIATION has no duty to defend or indemnify WYNDHAM in the Underlying Action.

46. This is true because WYNDHAM refused ASSOCIATION's numerous offers to defend it made in good faith.

47. ASSOCIATION had a right to defend the Underlying Action under the express terms of its policies which state, "[w]e will have the right and duty to defend the insured against any "suit" seeking those damages."

48. ASSOCIATION had no duty to pay any other litigation expenses incurred unilaterally by its insured pursuant to the Policies which provided in part, "No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B."

49. Further, under the Policies, ASSOCIATION was only bound to pay for "[a]ll expenses we incur."

50. "[W]hen an insurer offers to defend under a reservation of rights, Florida law provides that the insured may, at its election, reject the defense and retain its own attorneys without jeopardizing its right to seek indemnification from the

insurer for liability ... [N]either *Taylor v. Safeco* nor any other Florida case stands for the proposition that an insured may recover attorney's fees and costs after rejecting a defense under a reservation of rights." *Quantum Park Property Owner's Association, Inc. v. United States Liability Insurance Company*, Case No. 14-80845-CIV-DIMITROULEAS, 2015 WL 11422283 *4 (March 26, 2015) quoting *Travelers Indem. Co. of Illinois v. Royal Oak Enterprises, Inc.*, 344 F. Supp. 2d 1358, 1370-71 (M.D. Fla. 2004).

51.   As such, ASSOCIATION is entitled to a declaratory judgment finding that WYNDHAM breached the express terms of the Policies by repeatedly rejecting ASSOCIATION's offers of defense and that, as such, WYNDHAM is not entitled to any contribution, repayment or recovery from ASSOCIATION for attorneys' fees and costs WYNDHAM incurred in the defense of the Underlying Action.

WHEREFORE ASSOCIATION CASUALTY INSURANCE COMPANY hereby requests that this Court enter an Order declaring that WYNDHAM HOTELS & RESORTS, INC. has no right to seek contribution, repayment or recovery of attorneys' fees and costs incurred by WYNDHAM HOTELS & RESORTS, INC. in its defense of the Underlying Action from ASSOCIATION CASUALTY INSURANCE COMPANY under the Policies and any other relief which this Court deems just and appropriate.

Respectfully submitted,

*/s/ Elizabeth M. van den Berg*
George W. Hatch, III, Esq. • FBN 0072028
george@guildaylaw.com
Elizabeth M. van den Berg • FBN 0087744
elizabeth@guildaylaw.com

GUILDAY LAW

Guilday Law, P.A.
1983 Centre Pointe Blvd., Suite 200
Tallahassee, Florida  32308
(850) 224-7091 Telephone
(850) 222-2593 Facsimile
Secondary Email Addresses:
sofia@guildaylaw.com
stephanie@guildaylaw.com
dana@guildaylaw.com
**ATTORNEYS FOR PLAINTIFF**